UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD GARDNER, | : |
| Petitioner, | : Civ. No. 17-3438 (RBK) |
| v. | : |
| THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al., | : OPINION |
| Respondents. | : |

**ROBERT B. KUGLER, U.S.D.J.**

**I.     INTRODUCTION**

Petitioner, Richard Gardner, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted in 2008 and is currently serving an eighteen-year sentence with an eighty-five percent period of parole ineligibility pursuant to New Jersey's No Early Release Act ("NERA"). N.J. Stat. Ann. § 2C:43-7.2. Petitioner raises several claims in his habeas petition. For the reasons set forth below, the petition will be denied and a certificate of appealability shall not issue.

**II.    FACTS**

At trial, Bruce Hanson testified that on May 3, 2006, he visited the Eli family house in Franklin Township, New Jersey. *See State v. Gardner*, No. A-3034-08T2, 2011 WL 4808257, at *1 (N.J. Super. Ct. App. Div. Oct. 12, 2011). Hanson was visiting the home to retrieve a cell phone he had previously given to Marcella Eli in exchange for drugs. *See id*. Hanson testified that he was present in the house for a few hours, during which Petitioner was "in and out" of the premises. *See id*. Hanson stated that he had met Petitioner once or twice before and believed that Petitioner was a member of the Eli family. *See id*.

Hanson left the Eli residence between 2:30 and 3:00 pm that day and began walking towards Route 47. *See id.* As he was walking, a vehicle pulled alongside him and the driver, Cynthia Corsey, offered him a ride. *See id.* Hanson testified that Omar Rhodes, who Hanson did not know, was seated in the front passenger seat and Petitioner was seated in the rear passenger seat. *See id.* After Hanson entered the vehicle, Rhodes stated that he needed to urinate and asked Corsey to pull over. *See id.* Corsey turned the vehicle into the parking lot of a local park which had a restroom. *See id.* When Rhodes exited the vehicle, however, he went to the left rear passenger door and leaned against it, preventing Hanson from exiting the vehicle. *See id.* Petitioner then stated to Hanson, "Do you know what time it is?" and proceeded to punch Hanson in the forehead, hold a knife against Hanson's throat, and demand Hanson's money. *See id.* Hanson testified that Corsey also threatened him with a box cutter. *See id.* Hanson stated that after stealing $280 from him, Petitioner and Corsey demanded he exit the vehicle. *See id.* Hanson testified that as the car drove away, he memorized the license plate. *See id.* Thereafter, Hanson saw a group of men fishing nearby, asked to use their cellphone, and called 9-1-1. *See id.*

Hanson also testified that before trial began, Petitioner's sister Marcella Eli had approached him and asked him to sign a letter recanting his identification of Petitioner as one of the individuals who had robbed him. *See id.* at *2. Although the letter bore a notary stamp, Hanson testified that he did not sign the letter in the presence of a notary. *See id.* Hanson explained that he signed the letter because he knew "what it's like to have a drug problem." *See id.* This statement was not objected to by defense counsel. *See id.* Hanson further stated that he had been reluctant to testify at trial because he had children that resided in "the same town" and he feared that his testifying could "create an issue for them." *See id.* This statement was also not objected to by defense counsel. *See id.*

At trial, the State called Cynthia Corsey as a witness. *See id*. Corsey testified that she was still a defendant in the case and was facing a separate trial arising from the same incident. *See id*. Corsey denied that the State had promised her anything in exchange for her testimony at Petitioner's trial. *See id*. Corsey stated that she was "putting [herself] at risk of things out on the street" by testifying, and that her main concern was being labeled a "snitch." *See id*. Corsey stated that on the day of the crime, she, Rhodes, and Petitioner went to Petitioner's grandmother's house in Franklin Township. *See id*. Corsey saw Hanson, who she did not know at the time, also at the home. *See id*. When Corsey, Rhodes, and Petitioner left the house about half an hour later, they saw Hanson walking on the street. *See id*. At Petitioner's suggestion, Corsey offered Hanson a ride home. *See id*. When Rhodes asked to use the bathroom, she pulled into the local park, near the restroom. *See id*. Corsey testified that after Rhodes exited the vehicle, she heard a "tussle" in the backseat and Petitioner say, "Do you know what time it is?" *See id*. Corsey stated that she saw Petitioner holding something to Hanson's neck and demanding Hanson's money. *See id*. Corsey admitted she had a box cutter in her vehicle, but she denied using it during the crime. *See id*. She also denied that Rhodes was blocking Hanson from leaving the vehicle, stating that Rhodes had just been leaning against the door as he urinated. *See id*.

During Petitioner's case-in-chief, he called Detective Kenneth Cresitelli as a defense witness. *See id*. Detective Cresitelli was an investigator on the case and had taken a recorded statement from Hanson the day of the crime. *See id*. Since the defense had failed to confront Hanson with the recorded statement during his testimony, the trial court prohibited defense counsel from directly questioning Detective Cresitelli about any inconsistencies between the tape and Hanson's trial testimony. *See id*. The prosecutor was also not permitted to question Detective Cresitelli about any statements made on the tape. *See id*. The prosecutor was, however, allowed

3

to question Detective Cresitelli regarding other aspects of his investigation. *See id*. at *3. On cross-examination, the prosecutor elicited testimony from Detective Cresitelli that demonstrated what Hanson had told police on May 3, 2006 was consistent with the findings of the investigation. *See id*. Part of this testimony included Detective Cresitelli's statement that the tire tracks found at the scene of the crime appeared to match the tire treads on Corsey's vehicle. *See id*.

During closing remarks, the prosecutor clarified that Detective Cresitelli was not an expert in tire treads and had only been testifying as to his personal observations. *See id*. The prosecutor also commented during summation that "it was reasonable for Hanson to be afraid to come to court to confront the people who attacked him and to be afraid because his children live near the Eli house." *Id*.

After the jury returned their guilty verdict as to the robbery and related charges, the trial court immediately commenced with Petitioner's trial for the certain persons offense. *See id*. The State introduced evidence of Petitioner's prior felony conviction and then rested. *See id*. The trial court then instructed the jury as to the certain persons charge. *See id*. After deliberations, the jury returned with a guilty verdict. *See id*. Petitioner was sentenced to eighteen years imprisonment subject to NERA. *See id*. at *1.

### III. PROCEDURAL HISTORY

Petitioner appealed his conviction and sentence to the New Jersey Superior Court, Appellate Division. (ECF No. 8-3 at 28.) On October 12, 2011, the Appellate Division affirmed Petitioner's conviction and affirmed the sentence he received for the robbery and certain persons charges. *See Gardner*, 2011 WL 4808257, at *6-7. The Appellate Division remanded the matter back to the trial court, however, to reflect a merger of the remainder of Petitioner's offenses into his sentence for the robbery conviction. *See id*. at *7. On May 3, 2012, the New Jersey Supreme

4

Court granted Petitioner's request for a writ of certiorari. *See State v. Gardner*, 42 A.3d 889 (N.J. 2012). However, on April 17, 2013, the court issued an order stating that it had "improvidently granted" Petitioner's application and dismissed the appeal. *See State v. Gardner*, 64 A.3d 514 (N.J. 2013).

On April 30, 2013, Petitioner submitted a petition for Post-Conviction Relief ("PCR") to the New Jersey Superior Court, Law Division. *See State v. Gardner*, No. A-1375-14T1, 2016 WL 2596394, at *1 (N.J. Super. Ct. App. Div. May 6, 2016). Following oral argument, the court denied the Petitioner's request for PCR. (ECF No. 8-7 at 99.) The Appellate Division affirmed the PCR court's decision. *See Gardner*, 2016 WL 2596394, at *3. The New Jersey Supreme Court denied Petitioner's writ of certiorari. *See State v. Gardner*, 156 A.3d 166 (N.J. 2016).

In May 2017, Petitioner filed the instant § 2254 Petition. (ECF No. 1.) On July 14, 2017, Respondents filed an Answer in opposition. (ECF No. 8.) Petitioner filed a reply brief shortly thereafter. (ECF No. 9.)

## IV. HABEAS CORPUS LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104–132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id*. (citations omitted). A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "[Federal courts] may not characterize [] state-court factual determinations as unreasonable 'merely because [they] would have reached a different conclusion in the first instance.' [. . .] If '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's … determination.'" *Brumfeld v. Cain*, 135 S. Ct. 2269, 2277 (2015) (alterations in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The petitioner carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Dennis Sec'y Dep't of Corr.*, 834 F.3d 263, 353 n.10 (3d Cir. 2016) (Jordan, J., concurring in part and concurring in the judgment) (noting that while *Ylst* predates the passage of AEDPA, the *Ylst* presumption that any subsequent unexplained orders upholding the judgment will be presumed to rest upon the same ground is still valid). Additionally, AEDPA deference is not excused when state courts issue summary rulings on claims as "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

V.  DISCUSSION

### A. Trial Testimony of Detective Cresitelli

In his first ground for relief, Petitioner argues that the trial court abused its discretion in permitting Detective Cresitelli, a defense witness, to testify on cross-examination beyond the scope of direct examination and to provide "expert" testimony. (ECF No. 1 at 5; ECF No. 9 at 5-7.) Petitioner submits that Detective Cresitelli was called as a defense witness for the sole purpose of introducing a taped statement from Bruce Hanson which demonstrated inconsistencies between Hanson's statement to police and his testimony at trial. (ECF No. 8-1 at 17-18.) However, Petitioner argues that the trial court improperly permitted the State to cross-examine Detective

7

Cresitelli regarding topics unrelated to Hanson's taped statement. (*Id*. at 18.) Petitioner also submits that the trial court improperly allowed Detective Cresitelli to testify as an expert witness when he stated that the tire tracks found at the scene of the crime matched the tire treads he observed on Corsey's vehicle. (*Id*.)

These claims were both denied by the Appellate Division on Petitioner's direct appeal. *See Gardner*, 2011 WL 4808257, at *4. Regarding the cross-examination of Detective Cresitelli, the Appellate Division held that not only did the trial court have the discretion to determine the scope of cross-examination, but also that the cross-examination by the State had been appropriately relevant to the testimony elicited on direct. *See id.* at *5. On direct, the defense attorney attempted to demonstrate the inconsistency of Hanson's testimony, and on cross-examination the prosecutor elicited testimony that demonstrated Hanson's story *was* consistent with the investigation results. *See id.* at *5. Regarding Detective Cresitelli's "expert" testimony, the Appellate Division held that Detective Cresitelli did not need to be qualified as an expert to testify about the similarity of the tire tracks to Corsey's vehicle treads. *See Gardner*, 2011 WL 4808257, at *5. The Appellate Division also emphasized that the State never presented Detective Cresitelli as an expert witness and, in fact, highlighted to the jury that Detective Cresitelli was not qualified as an expert. *See id*.

Generally, the admissibility of evidence is a question of state law which is not cognizable under habeas review. *See Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence.") "[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) (citing *Spencer v. Texas*, 385 U.S. 554, 564 (1967)). The states are entitled to deference in their determinations regarding evidence and procedure. *See Crane v.*

8

*Kentucky*, 476 U.S. 683, 690 (1986). However, if a petitioner can demonstrate that the state court's evidentiary ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair," then he may successfully establish a violation of his Due Process rights. *Scott v. Bartkowski*, Civ. No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

Here, Petitioner has not demonstrated that the scope of Detective Cresitelli's cross-examination deprived Petitioner of a fair trial. Both the New Jersey and Federal Rules of Evidence provide that, although cross-examination should generally not go beyond the scope of direct examination, a trial court can permit inquiry into additional matters "as if on direct examination." Fed. R. Evid. 611; *see also* N.J. R. Evid. 611. Both New Jersey and federal law provide also provide that the trial court has wide discretion in determining the scope of cross-examination. *See Alford v. United States*, 282 U.S. 687, 694 (1931); *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also State v. Harvey*, 699 A.2d 596, 630 (N.J. 1997). In the instant case, this Court agrees with the Appellate Division's finding that the scope of cross-examination was directly related to the testimony elicited on direct. Defense counsel used Hanson's taped statement to demonstrate the inconsistencies between his statement to police and his trial testimony, and to undermine Hanson's credibility. Thereafter, the prosecutor elicited testimony from Detective Cresitelli on cross-examination which demonstrated that the investigation findings in the case corroborated Hanson statements. Thus, the prosecutor's cross-examination was used to rebut defendant's attempt to undermine Hanson's credibility and the questions asked were related to the scope of direct. Accordingly, Petitioner has not demonstrated that the trial court's ruling as to the scope of cross-examination was "so arbitrary or prejudicial" that it deprived him of a fair trial.

Nor has Petitioner established that the state court's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law.

Petitioner has also not established that permitting Detective Cresitelli to testify about the tire treads deprived him of a fair trial. Under both the New Jersey and Federal Rules of Evidence, lay witnesses are permitted to testify as to their opinion, as long as that opinion is based upon the witness' perception. *See* N.J. R. Evid. 701; Fed. R. Evid. 701. Law enforcement officers may testify as lay witnesses as long as their testimony is based upon their personal observations and perceptions. *See State v. LaBrutto*, 553 A.2d 335, 340 (N.J. 1989). Although Petitioner argues Detective Cresitelli provided "expert testimony" despite not being qualified as an expert, this Court agrees with the Appellate Division that Detective Cresitelli did not need to be an expert to be able to testify about his observation of the tire treads. Importantly, the State also never held Detective Cresitelli out as being an expert. In fact, the State expressly reminded the jury during summation that Detective Cresitelli was not qualified as an expert in tire marks and that he was basing his opinions solely upon his personal observations. (ECF No. 8-6 at 83-84.) Accordingly, Petitioner has not demonstrated that the trial court's permission of this testimony was "so arbitrary or prejudicial" as to render his trial fundamentally unfair. Petitioner has also not established that the state court's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law.

**B. Prosecutorial Misconduct**

In Petitioner's second ground for relief, he submits that the State engaged in prosecutorial misconduct which denied him his constitutional right to a fair trial. (ECF No. 1 at 7; ECF No. 9 at 7-11.) Specifically, Petitioner submits that the following four instances of misconduct occurred:

(A) The prosecutor improperly questioned both Mr. Hanson and Ms. Corsey about their fear of Defendant and then improperly commented on the issue in his summation.

(B) The prosecutor improperly testified in his summation about Mr. Hanson's affidavit retracting his claim that Defendant had robbed him, and denigrated Defendant's character.

(C) The prosecutor improperly testified about the statement given by Cynthia Corsey.

(D) The prosecutor engaged in misconduct by referring to Mr. Hanson's assertion that he filled out the false affidavit on Mr. Gardner's behalf because he knew "what it was like to have a drug habit."

(ECF No. 9 at 7-8.)

Petitioner raised this claim during his direct appeal. (ECF No. 8-1 at 23-34.) The Appellate Division held that none of these instances of alleged impropriety warranted a reversal of Petitioner's conviction. *See Gardner*, 2011 WL 4808257, at *5. The Appellate Division explained, in pertinent part:

> [. . .] The majority of the allegedly improper statements, questions, and testimony were unobjectionable. Neither Hanson nor Corsey testified specifically that they were afraid of retaliation by defendant. Corsey's testimony, in particular, could be understood to mean that she did not want to be known in the community as someone who was a "snitch." None of Hanson's testimony was aimed at showing that he was afraid based on anything other than defendant's alleged act of violence against him in this case.
>
> The prosecutor properly asked Hanson to explain why he signed the written statement recanting his identification of Gardner. We agree that Hanson's comment, that he knew "what it was like to have a drug habit," might have been understood as implying that defendant was a drug addict. But the jury could instead have inferred that Hanson was referring to Marcella Eli as having a drug habit, since Hanson identified her as selling drugs, and she asked him to sign the statement. There was no objection to this testimony, and part of the defense strategy was to portray Hanson as a drug addict who came to defendant's house to buy drugs. In the context of this record, we cannot conclude that Hanson's testimony constituted plain error. *R.*

> 2:10–2; *State v. Macon,* 57 *N.J.* 325, 336 (1971). Defendant's additional contentions do not warrant discussion here. *R.* 2:11–3(e)(2).

*Id*.

Habeas relief for a claim of prosecutorial misconduct may be warranted where a petitioner establishes that the prosecutor's conduct "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the alleged misconduct must be of such "sufficient significance" that it resulted in the denial of the petitioner's right to a fair trial. *See Werts v. Vaughn*, 228 F.3d 178, 197 (2000) (quoting *Greer*, 483 U.S. at 765). A prosecutor's remarks will only rise to the level of a constitutional violation if they were sufficiently prejudicial within the context of the entire trial. *See id.* (citing *Greer*, 483 U.S. at 766.) A reviewing court is instructed to "weigh the prosecutor's conduct, the effect of the curative instructions and the strength of the evidence" when making its determination. *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001) (citing *Darden*, 477 U.S. at 182).

### i. *Fear of Petitioner*

Petitioner states that the first instance of alleged misconduct occurred when the prosecutor elicited testimony from witnesses Hanson and Corsey about their fear of Petitioner and then improperly commented on those fears during summation. (ECF No. 9 at 7-11.) However, as the Appellate Division emphasized, the prosecutor never questioned Hanson or Corsey about their fear of Petitioner. In an attempt to explain Hanson's recantation of his initial police statement, the prosecutor had asked Hanson why he did not want to go forward with the case. (ECF No. 8-5, at

75.) Hanson responded that he has children who live "in the same town" and he was afraid that testifying may "cause an issue" for them. (*Id*.) But Hanson never testified, nor was he asked, about whether he was afraid of Petitioner. Regarding Corsey, the prosecutor sought to demonstrate at trial that Corsey had not been provided anything by the State in exchange for her testimony. (ECF No. 8-6, at 13.) When the prosecutor questioned Corsey about this, she indicated that the State had not made her any promises and that by testifying she was "putting [herself] at risk" of having her testimony used against her at her own trial, as well as "putting [herself] at risk of things out on the street." (*Id*. at 13-14.) On cross-examination, Corsey was asked to elaborate on her concerns about "things out on the street," to which Corsey testified she feared being labeled a "snitch." (*Id*. at 15.) But Corsey also never testified, nor was she asked, about whether she feared Petitioner.

Moreover, the prosecutor also did not comment during his summation about either witness being afraid of Petitioner. In attempting to explain Hanson's apparently nervous demeanor and his recantation letter, the prosecutor did state that Hanson had fears, either "founded or unfounded," for his family who lived near where the crime occurred. (ECF No. 8-6, at 77.) But the prosecutor did not indicate that Hanson feared Petitioner. And, in reiterating that Corsey had not received any promises from the State in exchange for her testimony, the prosecutor stated that she testified "obviously at [her own] risk." (*Id*. at 81.) However, this comment also does not indicate that Corsey feared Petitioner. When placed in context, the remark appears to indicate that Corsey was putting herself at risk of her testimony being used against her at her own trial.

Upon review of the record, it is clear that Petitioner's argument that the prosecutor improperly elicited testimony about Hanson and Corsey's fear of him is without merit. Petitioner

13

has not demonstrated that the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law.

   *ii.*  *Mr. Hanson's Affidavit and Reference to Drug Habit*

  The second instance of alleged misconduct occurred when the prosecutor "improperly testified" during summation about Hanson's recantation letter and "denigrated defendant's character." (ECF No. 9, at 8-11.) Specifically, Petitioner refers to the prosecutor's statement that it is illegal to notarize a document when the person executing the document does not sign it in the presence of the notary, as well as the prosecutor's reference to Hanson's statement that he signed the letter because he knew "what it's like to have a drug problem." (ECF No. 8-6, at 78.) Reviewing the prosecutor's comments within the context of the entire trial, these comments did not deprive Petitioner of a fair trial. During his testimony, Hanson stated that, prior to trial, Petitioner's sister asked him to sign a letter recanting his statement to police that identified Petitioner as the individual who assaulted him. (ECF No. 8-5, at 56-57.) When asked why he signed the letter, Hanson responded that he did so because he knew "what it's like to have a drug problem." (*Id*. at 56.) Hanson also testified that although he signed the statement, he did not date the letter nor was he present when it was notarized. (*Id*.) During summation, when explaining why Hanson signed the recantation letter, the prosecutor simply reiterated Hanson's statement: "You heard Mr. Hanson say oh, I know of other people that have had drug problems." (ECF No. 8-6, at 77.) The prosecutor also commented that if the jury believed the testimony of Hanson then it was "illegal for this person who appears to have a Notary stamp to notarize the document when the person's who's [sic] executing the document is not in front of him." (ECF No. 8-6, at 77.)

  Within the context of the entire trial, this Court agrees with the Appellate Division's holding that the prosecutor's comments were not so egregious as to deprive Petitioner of a fair

14

trial. *See Greer*, 483 U.S. at 766. The prosecutor's comment regarding the notary was an attempt to explain Hanson's recantation, and not an indictment of Petitioner's character. Additionally, it was unclear as to who Hanson was referring to when he stated that he knew "what it was like to have a drug problem." As the Appellate Division pointed out, Hanson may have been referring to Petitioner, or he may have been referring to Petitioner's sister, Marcella, who asked Hanson to sign the recantation letter and who Hanson had previously identified as selling drugs. *See Gardner*, 2011 WL 4808257, at *5. Moreover, it was part of Petitioner's defense strategy to portray Hanson as a drug addict who visited Petitioner's house and Petitioner's family to purchase drugs. (ECF No. 8-6, at 69-70; ECF No. 8-5, at 61-76.) Thus, within the context of the entire trial, the prosecutor's comments were not so egregious as to deprive Petitioner of a fair trial. The state court's adjudication of the claim was not contrary to, or an unreasonable application of, clearly established federal law.

   iii.  *Cynthia Corsey's Statement*

Petitioner also submits that the prosecutor engaged in misconduct when he "improperly testified about the statement given by Cynthia Corsey." (ECF No. 9, at 9.) However, Petitioner does not elaborate on this claim. (*See generally* ECF Nos. 1, 9.) In his supporting facts, Petitioner does reference Corsey's testimony that she was "putting [herself] at risk" and that she did not want to be labeled a "snitch." (*Id*. at 9-10.) To the extent Petitioner is attempting to argue that the prosecutor improperly elicited that testimony, that issue has already been addressed. To the extent Petitioner is attempting to raise a different claim, he has not presented sufficient facts for habeas review. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005) (stating that a petitioner is required to "state the facts supporting each ground [for relief]"); *see also Zettlemoyer v. Fulcomer*, 923 F.2d 284,

298 (3d Cir. 1991) (a petitioner is not entitled to habeas relief unless he sets forth "facts to support his contention").

Given all of the foregoing, and upon review of each of the prosecutor's remarks within the context of the entire trial, this Court does not find that the state court's adjudication of Petitioner's prosecutorial misconduct claim was contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to relief on prosecutorial misconduct grounds.

**C. Defendant's Right to Testify**

In his third ground for relief, Petitioner argues the trial court "mishandled" his bifurcated certain persons trial when the court failed to inquire whether Petitioner wanted to testify on his own behalf. (ECF No. 1 at 8.) Petitioner implies this failure denied him his constitutional right to testify. (*Id.*) When this issue was raised on direct appeal, the Appellate Division held that Petitioner never indicated he wanted to testify at the certain persons trial. *See Gardner*, 2011 WL 4808257, at *6. The Appellate Division explained that although the better practice would be for a court to ask a defendant whether he would like to testify, the trial court's failure to do so in Petitioner's case did not warrant reversal given that Petitioner had not provided any indication of his desire to testify. *See id*.

Although not expressly enumerated in the Constitution, a defendant's right to testify on their own behalf at trial has been found in the Fifth, Sixth, and Fourteenth Amendments. *See Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987). A defendant also has the right to choose not to testify at trial. *See id*. When a defendant chooses to waive his right to testify, he must do so with "intentional relinquishment or abandonment." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). But there is no Supreme Court precedent mandating that a trial court formally ask a defendant whether he intends

16

to testify at his own trial. *See Pendleton v. Pierce*, Civ. No. 12-524, 2015 WL 4966708, at *6 (D. Del. Aug. 20, 2015) ("[T]here is no Supreme Court precedent requiring a trial court to conduct a formal colloquy with a defendant who chooses not to testify, or requiring a waiver of the right to testify to occur formally on the record.") The majority of the circuit courts of appeals have held that it is not the duty of the trial court "to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived that right voluntarily." *United States v. Pennycooke*, 65 F.3d 9, 11 (3d Cir. 1995); *see also United States v. Rodriguez-Aparicio*, 888 F.3d 189, 193-94 (5th Cir. 2018) ("[a]n overwhelming majority of the circuits have held that a district court generally has no duty to explain … [the] right to testify or to verify that the defendant … has waived the right voluntarily" (internal quotation marks and citation omitted) (alterations in original)). Rather, trial courts are encouraged not to inquire as to a defendant's waiver for fear of affecting a defendant's decision. *See Pennycooke*, 65 F.3d at 11; *see also Rodriguez-Aparicio*, 888 F.3d at 193-94.

Here, Petitioner does not point to, and this Court is unaware of, any Supreme Court precedent requiring a trial court to inquire of the defendant whether he intends to testify on his own behalf. In fact, the case law of the majority of the circuit courts indicates that the trial court should not inquire as to the defendant's choice. *See Pennycooke*, 65 F.3d at 11; *see also Rodriguez-Aparicio*, 888 F.3d at 193-94. In the absence of any clearly established federal law, Petitioner is unable to demonstrate that the state court's adjudication of this claim was contrary to, or an unreasonable application of, that law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (holding that when Supreme Court case law "give[s] no clear answer to the question presented, let alone one in [Petitioner]'s favor, it cannot be said that the state court unreasonably applied clearly

17

established federal law." (internal quotation marks and citation omitted)). Accordingly, Petitioner is not entitled to relief on this claim.

**D. Jury Deliberation Notes**

In his fourth ground for relief, Petitioner contends "[i]t was error for the judge to assume the meaning of the jury's note to the judge during deliberation." (ECF No. 1, at 10.) Specifically, Petitioner states that during deliberation, the jury submitted a question asking, "What happens if we cannot agree on one specific charge/question?" (ECF No. 8-7, at 49.) In response, the trial court re-read the following portion of the jury charge:

> It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. If you cannot -- if you can do so without violence or [sic] individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effective evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. You are not partisans, you are judges, judges of fact.
>
> My job now is to send you back in and hopefully you can come out with a unanimous verdict, and I'm going to ask you to try to do that. Does that answer your question?

(*Id*. at 53.) Petitioner states that this instruction did not answer the jury's question and led the jury to believe their "only option" was to "reach an agreement." (ECF No. 9, at 14-15.)

When Petitioner raised this claim on direct appeal, it was denied by the Appellate Division. *See Gardner*, 2011 WL 4808257, at *4. The Appellate Division did not address the merits of the issue but simply stated that the argument was unpersuasive and did not warrant discussion in a written opinion. *See id*.

18

Generally, a jury is presumed to have followed a court's instructions and to have understood a court's answers to its questions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). If a jury remains confused as to its role and needs additional information, it is assumed that the jury would inform the court. *See id.* (quoting *Armstrong v. Toler*, 11 Wheat. 258, 279, 6 L.Ed. 468 (1826) (opinion of Marshall, C.J.)). "To presume otherwise would require reversal every time a jury inquires about a matter of constitutional significance, regardless of a judge's answer." *Id*. For a habeas petitioner to be entitled to relief on a defective jury instruction claim, the petitioner must demonstrate there was a "reasonable likelihood that the jury … applied the challenged instructions in a way that violates the Constitution." *Smith v. Horn*, 120 F.3d 400, 411 (3d Cir. 1997) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)) (emphasis in original).

Here, Petitioner has not demonstrated the jury misapplied the trial court's instruction in a way that violates the Constitution. After the jury asked their question regarding unanimity, the trial court re-read the portion of the New Jersey Model Jury Charge instructing the jurors to consult with one another and consider the evidence, but informing them that they must make their own decisions and not surrender their honest convictions *for the mere purpose of returning a verdict*. (ECF No. 8-7, at 53.) Nowhere in this instruction did the trial court indicate that the jury's "only option" was to come to a unanimous verdict. *See Locust v. Ricci*, Civ. No. 08-2713, 2010 WL 1463190, at *15 (D.N.J. Apr. 12, 2010) (holding that the same jury deliberation charge did not "overtly discourage hung juries" and that the charge "did not have the capacity to produce an unjust result.") Indeed, the trial court explicitly stated he was returning the jury to the deliberation room to "*try*" and reach a unanimous verdict, not that they must only reach a unanimous verdict. (ECF No. 8-7, at 53.) The trial court then asked the jury whether he had answered their question, to which the jury responded yes. (*Id*.) The jury did not return with any further questions. (*Id*.)

Accordingly, this Court does not find that there is a reasonable likelihood that the jury misapplied the trial court's instructions. The state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on this claim.

## VI.     CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner fails to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## VII.    CONCLUSION

For the reasons stated above, the Petition for habeas relief is DENIED and a certificate of appealability shall not be issued.

DATED: September 19, 2019            s/Robert B. Kugler
                                                                                       ROBERT B. KUGLER
                                                                                       United States District Judge